Douglas E. **KAMPFER**, Plaintiff,

v.

William **VONDERHEIDE**, State Police Officer, Defendant.

Douglas E. Kampfer, Plaintiff,

v.

William Vonderheide, Defendant.

Nos. 5:01–CV–227, 5:02–CV–309.

United States District Court, N.D. New York.

July 23, 2002.

Douglas E. Kampfer, Mayfield, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney for Defendant, Attorney General of the State of New York, Office of the Attorney General, Albany, NY (Joel L. Marmelstein, Asst. Attorney General, of Counsel), for defendant.

---

**1.** Defendant's last name has also been spelled   VonderHeidi.

**5**

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On February 14, 2001 and March 4, 2002, *pro se* plaintiff Douglas E. Kampfer ("Kampfer" or "plaintiff") commenced the instant actions, pursuant to 42 U.S.C. § 1983, alleging that the defendant New York State Trooper William VonderHeide[1] ("VonderHeide" or "defendant") violated his rights under the First and Fourteenth Amendments. Specifically, Kampfer alleges that defendant's actions, in connection with an investigation, denied plaintiff access to the courts. Plaintiff also claims that defendant destroyed fireworks found on plaintiff's property in violation of New York State Penal Law § 405.05.

Defendant moves for summary judgment, pursuant to Fed.R.Civ.P. 56. Plaintiff opposes and cross moves to consolidate the actions. Oral argument was heard on May, 10, 2002, in Utica, New York. The cross motion to consolidate was granted from the bench. Decision on the summary judgment motions was reserved.

## II. FACTS

This action arose out of an incident occurring on December 10, 2000, in Mayfield, New York. The plaintiff called the New York State Police to report vandalism at his residence. VonderHeide responded and observed splattered egg on plaintiff's pick-up truck windshield, two unexploded firecrackers, and seven unused $CO_2$ canisters strewn about plaintiff's property. Except for the egged windshield, there was no other property damage or any injury to any member of the Kampfer family. Kampfer, a minister in the Church of Jesus Christ of Latter-day Saints, claimed the vandalism might have been because of his religious affiliation. However, except

for plaintiff's unsubstantiated allegations, no evidence was presented to further this claim.

The plaintiff contends the firecrackers (allegedly M1/M80 fireworks) and $CO_2$ canisters were intended to be a homemade bomb. Defendant collected the two firecrackers and seven $CO_2$ cylinders with his bare hands, thus rendering them useless for fingerprint analysis. VonderHeide stated by affidavit that the firecrackers were paper and accordingly of little use for obtaining fingerprint evidence. He also stated that the $CO_2$ cylinders were lying in an open field covered in snow and mud, exposed to the elements, and one cylinder was found under the tire of defendant's patrol car, thus also rendering them of little value for fingerprint analysis. Plaintiff stated one cylinder was found in the open rear bed of his pick-up truck.

At Kampfer's suggestion, VonderHeide interviewed Kampfer's two daughters and their boyfriends, all of whom denied any knowledge of or involvement in the incident in question. In addition, VonderHeide questioned Kampfer's neighbors, all of whom were unable to provide any further suspects or information relevant to the investigation. On January 25, 2001, after determining no further suspects would be found, VonderHeide decided to close the case and had the two firecrackers and seven $CO_2$ cylinders destroyed.

## III.  DISCUSSION

### A.  Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut*, 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "[t]he nonmoving party may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). The court's function "is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. 2505. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B.  Access to the Courts

■ "The right of access to the courts ... assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[2] To state a

**2.** The Supreme Court stated, "[d]ecisions of this Court have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Pro-

claim for a violation of the right to access the courts, Kampfer must allege facts which indicate that (1) the defendant "deliberately and maliciously interfered" with this access, and that (2) this interference resulted in injury. *Smith v. O'Connor*, 901 F.Supp. 644, 649 (S.D.N.Y.1995).

██ The first inquiry into a § 1983 claim for violation of one's right to access the courts is if the accused "deliberately and maliciously interfered" with plaintiff's access. *Smith*, 901 F.Supp. at 649. Except for plaintiff's empty allegations, no evidence has been presented that VonderHeide acted deliberately or maliciously. Accordingly, summary judgment is proper as to the § 1983 claim, because no reasonable jury could find for the plaintiff due to the lack of sufficient evidence. *See Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348.

██ Kampfer's injury arguments also fail. The Supreme Court held in *Christopher v. Harbury* that, "[h]owever unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." —— U.S. ——, 122 S.Ct. 2179, 2186–87, 153 L.Ed.2d 413 (2002). The Court continued by stating, the respondent-plaintiff "Harbury's complaint did not come even close to stating a constitutional claim for denial of access upon which relief could be granted." *Id.* at 2188. Harbury's complaint went "no further than the protean allegation that the . . . defendants' false and deceptive information and concealment foreclosed Plaintiff from effectively seeking adequate legal redress." *Id.* (citations omitted). Thus, the plaintiff in *Christopher* failed to identify her predicate claim and the remedy to which she would have been entitled. *See id.*

Kampfer's injury claim is that the defendant's actions have denied him his right to seek adequate legal redress, which is identical to the respondent-plaintiff's injury claim in the *Christopher* case. *See id.* Consequently, Kampfer's supposed lost cause of action is nonexistent. *See id.* In addition, a "plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* Plaintiff's remedy seeks protection for him, his family, his property, and from police retaliation, and he seeks justice. Any remedy plaintiff asks for would not be available to him because no predicate claim has been identified. Accordingly, plaintiff's complaint does not provide a "constitutional claim for denial of access upon which relief could be granted." *See id.*

In an additional argument, Kampfer alleges a second injury in that VonderHeide has forever precluded his ability to "commence a criminal action" against the perpetrators responsible for placing "homemade bomb[s]" on his property. Criminal statutes usually do not create a private right of action.[3] As to access

cess Clause, and the Fourteenth Amendment Equal Protection, and Due Process Clauses." *Christopher v. Harbury*, —— U.S. ——, 122 S.Ct. 2179, 2187 n. 12, 153 L.Ed.2d 413 (2002) (citations omitted).

3. Where a litigant brings a claim for damages under a criminal statute where no private action was thought to exist, the Supreme Court has established four factors for consideration:

(1) "is the plaintiff one of the class for whose especial benefit the statute was enacted—that is does the statute create a federal right in favor of the plaintiff"; (2) "is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) "is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff"; and (4) "is the cause of action one traditionally relegated to state law, in an area basically the concern of the

claims, "[u]nconstitutional deprivation of a cause of action occurs when government officials thwart vindication of a claim by violating basic principles that enable *civil claimants* to assert their rights effectively." *Barrett v. United States*, 798 F.2d 565, 575 (2d Cir.1986)(emphasis added).

Kampfer would not personally be able to commence a New York State criminal action against the person(s) who vandalized his home. *See People v. Calderone*, 151 Misc.2d 530, 573 N.Y.S.2d 1005, 1007 (N.Y.City Crim.Ct.1991)(holding that "decisions of the New York Court of Appeals and the Supreme Court of the United States lead this court to conclude that private prosecutions by interested parties or their attorneys present inherent conflicts of interest which violate defendants' due process rights"). *See also Erikson v. Pawnee County Bd. Of County Comm'rs*, 263 F.3d 1151, 1154 (10th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 1438, 152 L.Ed.2d 382 (2002)(holding that a private attorney would violate a state criminal defendant's due process rights if that attorney controlled critical prosecutorial decisions, which "include whether to prosecute, what targets of prosecution to select, what investigative powers to utilize, [or] what sanctions to seek") (citations omitted).

Accordingly, plaintiff cannot claim that the defendant has denied him access to the courts to pursue a criminal cause of action against perpetrators of vandalism. Kampfer cites *Stump v. Gates*, 777 F.Supp. 808 (D.Co.1991) and *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir.1983), both of which are distinguishable from this case.

In both *Stump* and *Ryland* a person had died, possibly murdered, as opposed to the present action where no one was injured. The plaintiffs in both cases were found to have stated an adequate access claim against the defendants with respect to civil causes of action. *See* 777 F.Supp. at 817, 708 F.2d at 973.

In *Stump*, the plaintiffs alleged that the defendants' investigation into decedent's death was deficient in numerous ways, most notably in that no autopsy or ballistics tests were performed before the body was cremated, the Coroner was initially barred, and the wife was not interviewed until eight days after decedent's death. *See* 777 F.Supp. at 813–14. The plaintiffs claimed that the defendants' actions precluded them from bringing a wrongful death action by "destroying evidence and deliberately failing to conduct an appropriate investigation." *Id.* at 817.

In *Ryland*, the plaintiffs alleged that a Mr. Shapiro murdered their daughter, Lavonna. *See* 708 F.2d at 969. It was further alleged that Mr. Shapiro, the then Assistant District Attorney ("ADA"), and the then District Attorney ("DA"), while acting under color of state law, obstructed the investigation into Lavonna's death. *See id.* The ADA and DA allegedly accomplished this by concealing documents and misrepresenting information to the police. *See id.* The plaintiffs claimed "that by concealing the murder ... the defendants prevented them from discovering that their daughter had been murdered" and this deprived them of their right to bring a wrongful death action. *Id.* at 971. The *Ryland* court found that the district court erred in concluding that the plaintiffs lacked standing, because the district court interpreted the plaintiffs' "claim merely as a suit by citizens to compel state prosecutors to initiate a *criminal* action against an alleged murderer." *Id.* at 973 (emphasis in the original). In the present action, no underlying civil cause of action was plead-

---

States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (citations omitted).

ed. Kampfer desires to commence a criminal action.

Accordingly, *Stump* and *Ryland*, where the predicate claims were civil, do not apply to Kampfer's underlying claim, which seeks to have vandals criminally prosecuted.

### C. *New York State Penal Law § 405.05*

Plaintiff argues, in opposition to defendant's motion, that VonderHeide did not have the legal right to destroy the fireworks found on his property without the consent of a magistrate judge pursuant to N.Y. Penal Law § 405.05.[4] However, section 405.05 deals with persons who unlawfully possess fireworks, and is intended to safeguard both the accused possessor's procedural due process rights and the public's safety. *See E. Coast Novelty Co. Inc. v. City of New York,* 781 F.Supp. 999, 1007 (S.D.N.Y.1992). Neither Kampfer nor VonderHeide unlawfully possessed fireworks.[5] Accordingly, section 405.05 does not apply to this case.

### D. *Qualified Immunity*

■ Defendant asserts that he is immune from liability under plaintiff's claim that he violated Kampfer's constitutional right of access to the courts due to the doctrine of qualified immunity. "The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999)(citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 127 (2d Cir.1997)). A decision in favor of a public official based on qualified immunity is appropriate if (1) the conduct attributed to him is not prohibited by federal law, or if such conduct is so prohibited; (2) if the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the defendant's actions; or (3) if it was not objectively reasonable for the official to know that his conduct violated that right. *See X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999); *see also Thomas,* 165 F.3d at 142–43. "The objective reasonableness test is met ... if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Thomas v. Roach,* 165 F.3d at 143 (quoting *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995))(quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Viewing the facts most favorable to the plaintiff, the defendant did act objectively reasonable. No one had been injured. The only damage was the egg on plaintiff's windshield. The scattered firecrackers and $CO_2$ canisters were lying in snow and mud, exposed to the elements, which ren-

---

**4.** Section 405.05 provides in relevant part:
Fireworks possessed unlawfully may be seized by any ... police officer, who must deliver the same to the magistrate before whom the person arrested is required to be taken. The magistrate must, upon the examination of the defendant, or if such examination is delayed or prevented, without awaiting such examination, determine whether the fireworks had been possessed by defendant in violation of the provisions of section 270.00; and if he finds that the fireworks had been so possessed by the defendant, he must cause such fireworks to be destroyed ... or to be delivered to the district attorney of the county in which the defendant is liable to indictment or trial, as the interest of justice and public safety may, in his opinion, require.
N.Y. Penal Law § 405.05 (McKinney 2000).

**5.** The offense of unlawful possession of fireworks is found at N.Y. Penal Law § 270.00 (McKinney 2000).

dered them of little value for fingerprint analysis. VonderHeide interviewed Kampfer, his two daughters and their boyfriends, and the neighbors, all of whom produced no relevant information. There were no existing leads. The defendant acted as an objectively reasonable police officer for the duration of the investigation, entitling defendant to qualified immunity as a matter of law.

## IV. CONCLUSION

There is no genuine issue for trial on the issue of access to the courts or New York State Penal law § 405.05. In addition, defendant is entitled to qualified immunity.

Accordingly, it is

ORDERED, that

1. Defendants' motion for summary judgment is GRANTED, and

2. Both complaints are DISMISSED in their entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.